UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DARRYL L. CAIN,

    Plaintiff,

v.                                          CASE NO. 8:09-CV-34-T-17MAP

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying his claims for a period of disability and Disability Insurance Benefits ("DIB"), as well as for Supplemental Security Income ("SSI"). This matter has been referred to me for report and recommendation. *See* 28 U.S.C. §636(b); Local Rule 6.01(c)(21).

Plaintiff argues the Administrative Law Judge ("ALJ") erred by: (1) determining Plaintiff's impairment did not meet listing 1.04 (disorders of the spine); (2) discrediting Plaintiff's complaints of pain and other subjective symptoms, including finding Plaintiff's testimony less credible based on Plaintiff's ability to perform daily activities; (3) determining Plaintiff's residual functional capacity ("RFC"); and (4) giving inadequate weight to the opinion of Plaintiff's examining physician and nurse practitioner. After reviewing the record, I conclude the ALJ's decision is in accordance with law and supported by substantial evidence. I therefore recommend that the district judge affirm the Commissioner's decision.

*Background*

Plaintiff is a fifty year old man with a high school degree. (R. 507) Plaintiff has past

work experience as a truck driver and concrete driver. (R.507-08) He alleges disability commencing May 28, 2004, stemming from back injuries at work in September and October 2003 (R. 422), as well as from numerous other health conditions.

The ALJ found Plaintiff has the severe combination of impairments of "lumbar degenerative disc disease with L5-S1 disc protrusion, diabetes, hypertension, obstructive sleep apnea, heel spur, arthritis in the right knee, hearing loss, and morbid obesity." (R. 19) The ALJ concluded Plaintiff's impairments or combination of impairments did not constitute a listed impairment. (R. 19-20) The ALJ further determined Plaintiff has the residual functional capacity ("RFC") to perform light work with the option to sit or stand at will. (R. 20). The ALJ concluded that although Plaintiff is not able to perform his past relevant work, he can perform other jobs that exist in significant numbers in the national economy and therefore is not disabled. (R. 25) The Appeals Council denied review. (R. 2)

*Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process,

promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's

3

decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*Discussion*

    *A.    Listing 1.04*

Plaintiff contends the ALJ failed to properly evaluate whether Plaintiff's impairment met or equaled Listing 1.04 (Disorders of the Spine). Specifically, Plaintiff argues the ALJ should have discussed the medical findings in light of the requirements of Listing 1.04 rather than summarily concluding Plaintiff failed to satisfy the listing criteria. He argues remand is required "so that the ALJ can properly determine whether the Claimant meets or equals listing 1.04." Doc. 15 at 9.

At the outset, I note the ALJ is not required to "mechanically recite the evidence leading to [his] determination." *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). In this case, the ALJ correctly set out the sequential analysis. Moreover, in conducting the listing analysis, he stated he had given "[p]articular consideration to sections 1.00ff, 2.0ff, 3.0ff, 4.0ff, 9.0ff, and 11.00ff dealing with musculoskeletal, special senses, respiratory, cardiovascular, endocrine, and neurological disorders." (R. 20) The ALJ further stated:

> [T]he findings in evidence do not approach the level of severity set forth in these or any other listings. No treating or examining physician reported findings of listing level severity. The State agency physicians determined that the claimant did not have an impairment of listing level severity.

(R. 20) Moreover, in other sections of his ruling, the ALJ gave thorough consideration to the

medical evidence in the record. I therefore conclude there was no error in the way the ALJ presented his findings.

To the extent Plaintiff contends the ALJ erred by determining Plaintiff did not satisfy Listing 1.04, specifically subsection A thereof, the Commissioner argues Plaintiff failed to meet all the required criteria and, even if he did, Plaintiff failed to show he met the listing on a sustained basis for twelve consecutive months as required by 42 U.S.C. § 423(d)(1)(A). I agree.

"When a claimant contends that he has an impairment meeting the listed impairments, the burden is on the claimant to present specific medical findings that meet the various tests listed under the description of the applicable impairment, or, if in the alternative, he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present evidence which describes how the impairment has such equivalency." *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987) (citation omitted). The "medical criteria must be met for a period of twelve continuous months." *Castro v. Astrue*, No. 8:08-cv-769-T-33TGW, 2009 WL 1975513, at *4 (M.D. Fla. July 8, 2009) (citation omitted).

Listing 1.04 provides coverage as follows:

1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04.

Plaintiff's evidence pertaining to the listing 1.04A criteria is lacking. For example,

records relevant to the compromise of Plaintiff's nerve root show the condition improved over time and are unclear as to the duration of any such compromise. The report of Plaintiff's December 2003 MRI performed shortly after his accident states Plaintiff had a mild disc bulge at L4-5 without stenosis. The report further states:

> At the L5-S1 level there is an asymmetric disc extrusion extending cephalad to the right. This is consistent with an HNP and results in severe right lateral recess stenosis and compression of the right S1 nerve root. There is also right-sided neural foraminal stenosis and compression of the right L5 nerve root.

(R. 389) However, when neurosurgeon Dr. Campanelli reviewed the 2003 MRI films, he characterized them as showing "minimal degenerative changes at L5-S1 and at L3-L4 and L4-L5." (R. 344) Plaintiff had another MRI in November 2006. The report of that MRI states Plaintiff has a "[f]airly broad based disc protrusion versus asymmetric bulge of the L5-S1 disc deviating the traversing right S1 nerve root posteriorly and also narrowing the L5-S1 right neural foramina." (R. 172) The reporting doctor further wrote he could not "completely exclude the possibility of the exiting right L5 nerve roots [being] impinged." (R. 172) He stated that clinical correlation was needed. (R. 172)

More critically, with respect to the requirement that Plaintiff show "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," the evidence is patently insufficient to support Plaintiff's claim of a listing. It is only in Dr. Fiore's December 2003 notes that there is evidence of weakness: "EHL strength is bilaterally 4/5 and symmetric," with his "[s]itting root test … slightly positive on the right, negative on the left." (R. 423) In April 2004, however, Dr. Martinez noted "[n]o atrophy or unusual abnormalities" with respect to Plaintiff's musculoskeletal system and "normal tone and 5/5 strength in all

6

extremities." (R. 417, 419) Dr. Delgado, a neurologist who saw Plaintiff in December 2004, stated Plaintiff's "[m]uscle tone and bulk were symmetric in upper and lower extremities," and that "[m]uscle strength in upper and lower extremities was 5 out of 5 without evidence for pronator drift or tremors." (R. 342) This evidence indicates Plaintiff had only slight weakness in the period immediately following his accident, which appears to have resolved shortly thereafter. I therefore conclude the ALJ's decision that Plaintiff's impairments do not meet or equal a listing is supported by substantial evidence.

      B.  *ALJ's treatment of Plaintiff's complaints of pain and subjective symptoms*

Plaintiff agues the ALJ failed to properly analyze his complaints of pain. Specifically, he argues the ALJ erred by failing to examine the intensity, persistence, or limiting effects of Plaintiff's pain, erroneously found Plaintiff's testimony less credible based on Plaintiff's ability to perform daily activities, and failed to give "explicit and adequate reasons for discounting" Plaintiff's credibility. Plaintiff further argues generally that the ALJ lacked substantial evidence on which to discredit Plaintiff's pain testimony.

An "ALJ must consider a claimant's subjective testimony if he finds (1) evidence of an underlying medical condition and (2) either (a) objective medical evidence to confirm the severity of the alleged pain arising from that condition or (b) that the medical condition was of such severity as to reasonably give rise to the alleged pain." *Pritchett v. Commissioner, Social Security Adm.*, 315 Fed. Appx. 806, 811 (11th Cir. 2009) (citing *Mason v. Bowen*, 791 F.2d 1460, 1462 (11th Cir. 1986)). If the ALJ discredits a claimant's testimony as to pain or other subjective symptoms, he must "clearly articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotations and citation omitted). "The

7

credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the [Court] to conclude that the ALJ considered [his] medical condition as a whole." *Id.* (punctuation and citations omitted).

In this case, the ALJ concluded Plaintiff does suffer from underlying impairments that reasonably could be expected to produce the symptoms alleged. (R. 20) The ALJ further concluded, however, that he could not fully credit Plaintiff's "statements as to the frequency, intensity, and duration of symptoms" because they were inconsistent with the evidence in the record. (R. 20) The ALJ recited Plaintiff's medical history, giving a detailed discussion of how the record does not support Plaintiff's claims as to the extent of his impairment.

The ALJ pointed out that Plaintiff's more recent MRI shows improvement in the condition of his back, and the medical records establish symptomatic improvement in his back over time. Additionally, as the ALJ noted, the "record does not document any diabetic crises or complications due to low or high blood sugar levels," and treatment notes do not show Plaintiff complained of "significant symptoms of diabetes, such as frequent urination." As for Plaintiff's cardiac health, the ALJ stated testing showed no signs of ischemia, Plaintiff's blood pressure was well-controlled when Plaintiff took the prescribed medication, and the record does not document that Plaintiff suffered from a heart attack. Regarding Plaintiff's sleep apnea, the ALJ stated Plaintiff's evaluation showed only mild sleep apnea that was controlled by CPAP, and the pulmonary function test showed Plaintiff suffered from "only mild restrictive defect." Further, although Plaintiff had suffered from heel spurs, the treatment was temporary and consisted of only NSAIDs and exercise. As for Plaintiff's hearing loss, the ALJ noted the evaluation showed mild to moderate hearing loss, but that Plaintiff's speech discrimination was excellent. The ALJ

further noted the record evidence showed no specific or significant complications with respect to Plaintiff's obesity, and that Plaintiff's arthritis in his knee was not an issue until March 2007 and apparently responded well to treatment. With respect to Plaintiff's complaints of swelling, the ALJ noted there is nothing in the record indicating Plaintiff had been advised by his physicians to elevate his legs frequently.

The ALJ further recited the daily activities to which Plaintiff testified, *i.e.*, some household chores, shopping with a motorized cart, caring for children and getting them ready for school, and operating the riding lawn mower for 20 to 30 minutes at a time. The ALJ noted those activities "are not inconsistent with the performance of light work activity." (R. 23)

The ALJ thoroughly reviewed the record and clearly recited the portions thereof that led him to discredit Plaintiff's complaints. Those considerations are acceptable bases on which to evaluate Plaintiff's complaints, 20 C.F.R. §§ 404.1529, 416.929, are supported by the record, and constitute substantial evidence supporting the ALJ's credibility determination.

### C. Examining Physicians

Plaintiff argues the ALJ erred by discounting the opinions of Dr. Fiore and the nurse practitioner who examined Plaintiff shortly after he was injured in 2003. Specifically, Plaintiff argues the ALJ should have relied on Dr. Fiore's opinion that Plaintiff was limited to part-time seated sedentary level work allowing for change of position at will, and the nurse's opinion that Plaintiff could not lift, bend, or stoop.

The ALJ explained his reasons for according little weight to Dr. Fiore's opinion as follows:

Although an orthopedic specialist, Dr. Fiore followed the claimant for only about 2

9

>months during the period December 2003 to February 2004 and cannot be considered a
>treating source. The opinion is not consistent with the subsequent medical evidence, the
>claimant's daily activities, or the other opinions of record.

(R. 23) Although the ALJ stated Dr. Fiore "cannot be considered a treating source," the only logical explanation for that statement is that the ALJ meant Dr. Fiore is not a treating source whose opinion should be accorded controlling weight due to the short duration of his treatment. *See* 20 C.F.R. §§ 404.1527(d)(2)(i), 416.927(d)(2)(i). With respect to the nurse practitioner's opinion, the ALJ stated he gave "very little weight to this opinion; the nurse practitioner saw the claimant for only a brief period of time, one week just after his back injury, was not a treating source, and is not an acceptable medical source for purposes of this decision."[1] (R. 23)

The ALJ clearly articulated his reasons for discounting the opinions of Dr. Fiore and the nurse practitioner. Those reasons are supported by the record and constitute substantial evidence supporting the ALJ's decision to discount the opinions.[2] To the extent Plaintiff complains the ALJ relied on the opinions of non-examining State agency physicians, his argument fails for multiple reasons. First, the ALJ relied on the record as a whole, including, *inter alia*, treating physician records, examining physician records, and Plaintiff's testimony, not only on non-examining physician records. Second, the regulations provide that although the ALJ is not

---

[1] The Social Security regulations define "acceptable medical source" as not including nurse practitioners. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a). Nurse practitioners are other sources from which the Commissioner may use evidence. 20 C.F.R. §§ 404.1513(d), 416.913(d).

[2] I note, moreover that Dr. Fiore's opinion as to how much Plaintiff could work was a moving target. *See* R. 424 (report of December 15, 2003, examination, stating Plaintiff's work status was "sedentary work only with no truck driving"); R. 426 (report of December 24, 2003, examination, stating Plaintiff could not work due to the combination of his large body size and the herniated disc); R. 428 (report of February 26, 2004, examination, stating Plaintiff could return to work "at absolute sedentary work only").

bound by State agency medical consultant findings, he is required to consider such findings as opinion evidence because such consultants are "highly qualified physicians…who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

### D. *Residual Functional Capacity*

Plaintiff's final argument is that the ALJ erred in determining his residual functional capacity ("RFC"). Plaintiff argues that although the ALJ found his diabetes, hypertension, obstructive sleep apnea, hearing loss, and morbid obesity to be part of the severe combination of impairments from which Plaintiff suffered, he "inexplicably excluded" them and their resulting limitations from the RFC determination. Plaintiff's argument is without merit. As detailed above, the ALJ's decision includes a thorough discussion of Plaintiff's impairments. That analysis is supported by the record.

*Conclusion*

For the reasons stated, it is hereby

RECOMMENDED:

1. The decision of the Commissioner be AFFIRMED.

IT IS SO REPORTED at Tampa, Florida on February 3, 2010.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).


cc: The Honorable Elizabeth A. Kovachevich
       Counsel of Record